UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00123-HBB

MARION BOURLAND             PLAINTIFF

VS.

ANDREW SAUL,
Commissioner of Social Security             DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Marion Bourland seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 13) and Defendant (DN 16) have filed a Fact and Law Summary. For the reasons that follow, the final decision of the Commissioner is **AFFIRMED,** and judgment is **GRANTED** for the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 11). By Order entered October 12, 2018 (DN 12), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

FINDINGS OF FACT

Bourland filed a previous disability application on November 2, 2011. At that time, she alleged disability beginning August 2, 2011. An ALJ denied the application on January 27, 2014 (DN 58-78). Bourland submitted the subject application for disability and disability insurance benefits on July 28, 2015, alleging she became disabled on February 1, 2014 as a result of Fibromyalgia, Neuropathy, Compromised autoimmune system, Hypothyroidism, Graves Dc, Vitamin D deficiency, Vitamin B deficiency, Anemia, Mental Fog from thyroidism (Tr. 252).

Administrative Law Judge Stacey L. Foster ("ALJ") conducted a video hearing on August 10, 2017. The ALJ presided from Paducah, Kentucky and Bourland appeared in Madisonville, Kentucky. Bourland was represented by counsel, Sara J. Martin. Also present and testifying was Travis Andrews, an impartial vocational expert.

In a decision dated January 30, 2018 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 17-30). At the first step, the ALJ found Bourland has not engaged in substantial gainful activity since February 1, 2014, the alleged onset date (Tr. 20). At the second step, the ALJ determined that Bourland's hypothyroidism, fibromyalgia, peripheral neuropathy, and depression are "severe" impairments within the meaning of the regulations (Tr. 20). At the third step, the ALJ concluded that Bourland does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 20).

At the fourth step, the ALJ found Bourland has the residual functional capacity to perform less than the full range of light work (Tr. 23). More specifically, the ALJ found that Bourland can occasionally climb ladders, ropes and scaffolds; frequently stoop, kneel, crouch, and crawl;

2

frequently climb ramps and stairs; with no exposure to pulmonary irritants such as fumes, odors, dust, gases and poor ventilation; she can understand, remember and carry out one to three-step tasks across a normal work schedule; can tolerate only occasional interaction with supervisors, co-workers and the general public; no fast-paced production rate work; cannot tolerate loud noise; and can adapt to the changes and pressures of a routine work environment (Tr. 23). Relying on testimony from the vocational expert, the ALJ found that Bourland is unable to perform any of her past relevant work (Tr. 28).

The ALJ proceeded to the fifth step where she considered Bourland's residual functional capacity, age, education, and past work experience as well as testimony from the vocational expert (Tr. 29-30). The ALJ found that Bourland can perform a significant number of jobs that exist in the national economy (Tr. 29). Therefore, the ALJ concluded that Bourland has not been under a "disability," as defined in the Social Security Act, from Febraruy1, 2014 through the date last insured (Tr. 30).

Bourland timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 299-306). The Appeals Council denied Bourland's request for review of the ALJ's decision (Tr. Tr. 1-6).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y

of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Bourland's request for review of the ALJ's decision (Tr. 1-6). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

4

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fifth step.

1. Assignment to Weight of Medical Opinions

Bourland's first argument is that the ALJ erroneously assigned little weight to the opinion of her treating provider, Dr. James Buchanan She argues that as her treating provider, Dr. Buchanan was in the best position to evaluate her condition and his opinion indicated Bourland is limited to sedentary or less than sedentary work (DN 13-1 PageID # 536). The Commissioner

responds in opposition, arguing that the ALJ's decision is supported by substantial evidence and therefore is not reversible (DN 16 PageID # 551).

Social Security regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c).[1] The process of assigning weight to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. The "treating physician rule" mandates that the ALJ give a treating physician's medical opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(c), 416.927(c); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must provide "good reasons" for doing so. The reasons must be supported by the record and sufficiently specific to make clear to reviewers the weight given to a treating source's opinion and the reasons for the assigned weight. Gayheart, 710, F.3d at 376. (citing Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at 5 (Soc. Sec. Admin. July 2, 1996)). If a treating physician opinion is not granted controlling weight an administrative law judge must then consider the factors in paragraphs (c)(1)-(6)[2] of this section in deciding how much weight to accord each of the medical opinions in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c).

---

1 Effective March 26, 2012, the numbering of the treating physician rules changed. Section 416.927(d)(2) became 416.927(c)(2), and section 404.1527(d)(2) became 404.1527(c)(2).

2 These factors are: 1) The length of the treatment relationship and frequency of examinations; 2) nature and extent of the treatment relationship; 3) the relevant evidence that the treating physician relies upon; 4) the consistency of the opinion with the record as a whole; 5) specialization of the treating physician.

6

The procedural requirements for assigning weight to the opinion of a treating source and providing "good reasons" for that weight serve both to ensure adequacy of review and to give the plaintiff a better understanding of the disposition of her case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the plaintiff's procedural rights.'" Cole, 661 F.3d at 937. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted).

Dr. Buchanan provided an opinion statement for the record (Tr. 467-70). He opined that Bourland was not able to stand for 6 hours in an 8-hour day and that full-time work requiring standing and walking would be "practically impossible" and make her symptom worse (Tr. 468-69). Here, the ALJ assigned little weight to Dr. Buchanan's opinion (Tr. 27). The ALJ noted that the statement provided by Dr. Buchanan was not "well explained, and not otherwise supported by relevant evidence" (Tr. 27). The ALJ summarized Dr. Buchanan's treatment as "noninvasive, routine, and conservative in nature." His own examinations routinely documented normal physical exams throughout the relevant period (Tr. 27). His recommendations appear to be based primarily on Bourland's subjective complaints, and therefore unsupported by substantial evidence (Tr. 27). For example, Dr. Buchanan regularly reported Bourland to have normal strength, balance, gait, and stance (Tr. 251, 355, 360, 364, 397, 400, 426, 430, 439, 446-47). X-Rays from March 2016 indicated no abnormalities (Tr. 24, 434). The ALJ also considered Bourland's daily activity which includes activities such as mowing the lawn, caring for grandchildren, preparing

7

meals, and driving. This activity undermined Dr. Buchanan's opinion that Bourland is incapable of working (Tr. 22, 24).

The ALJ did assign great weight to consultative examiner, Dr. Mark Burns, and state agency reviewing physician, Dr. Jack Reed, finding they were more consistent with the rest of the objective medical evidence in the record (Tr. 25, 27). Dr. Burns emphasized Bourland's repeated normal physical examinations (Tr. 386-87). Dr. Reed reviewed the entire record, including Dr. Buchanan's opinion, and determined that Bourland could complete light work—consistent with the prior ALJ's RFC finding (Tr. 27, 116). Substantial evidence in the record supports the ALJ's assignment of weight to the opinions of Drs. Burns and Reed.

Determining whether a claimant is unable to work or disabled is not a medical opinion under Social Security regulations, but is a decision reserved for the Commissioner. 20 C.F.R. § 404.1527(d). Drs. Burns and Reed's opinions and Bourland's daily activities constitute substantial evidence supporting the ALJ's RFC finding and decision to assign little weight to Dr. Buchanan's opinion. Importantly, substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). The ALJ adequately supported her finding with substantial evidence, therefore it cannot be overturned by this Court.

2. Bourland's Deteriorating Condition

Bourland's next argument is that the ALJ erred in determining that her condition has not worsened since the prior ALJ decision dated January 27, 2014 (DN 13-1 PageID # 538). She notes that if a claimant's condition has deteriorated since a previous decision, the ALJ is not bound

by that decision (Id. citing Drummond v. Comm'r of Soc. Sec., 126 F.3d 837 (6th Cir. 1997)). The Commissioner responds in opposition arguing that the ALJ properly considered the prior ALJ's decision and was correct in ruling that Bourland had "essentially the same RFC" (DN 16 PageID # 558 citing Tr. 17-18, 23, 28).

When an ALJ is considering a subsequent disability claim the ALJ must adopt the prior ALJ's or Appeals Council decision concerning disability, unless there is new and material evidence that merits a new finding. *See* Acquiescence Ruling 98-4(6). The Sixth Circuit recently clarified that an ALJ is permitted to review prior ALJ findings, but they are not bound by them. Earley v. Commissioner of Soc. Sec., 893 F.3d 929 (6th Cir. 2018). A subsequent ALJ should conduct a "fresh review" of the new record to determine if a claimant's condition has worsened. Earley, 893 F.3d at 934.

Bourland offers scant evidence that her condition worsened since the previous decision. She offers only her own testimony and a statement from Dr. Buchanan which was given little weight by the ALJ for the reasons discussed above (DN 13-1 PageID # 538). The ALJ clearly conducted a "fresh review" as required by Drummond and Earley (Tr. 28). The ALJ determined the "record is devoid [of] evidence of deterioration in the claimant's condition so as to warrant departure from the prior decision dated January 27, 2014" (Tr. 28). The ALJ pointed to physical consultative examinations and treatment records in the relevant period that suggest a normal condition. The ALJ noted Bourland has not undergone electro-diagnostic testing, has none-to-minimal positive trigger points, has no significant evidence of muscle spasms or swelling, and has presented no compelling evidence an assistive device is medically necessary to ambulate. The

ALJ assigned the prior ALJ decision great weight and supported that decision with substantial evidence.

3. <u>Vocational Expert Testimony</u>

Bourland's final argument is that substantial evidence does not support the ALJ accepting the Vocation Expert's (VE) testimony as reliable. Specifically, Bourland argues the VE based his testimony on outdated unreliable information in the Dictionary of Occupational Title (DOT) rather than amore up to date source such as ONET (DN 13-1 PageID # 540-542). The Commissioner disagrees, arguing that the ALJ reasonably relied on the VE's testimony to find that a significant number of jobs existed in the national economy that Bourland can perform (DN 16 PageID # 560).

The Sixth Circuit previously cautioned that "common sense dictates" when job descriptions in the DOT "appear to be obsolete, a more recent source of information should be consulted." <u>Cunningham v. Astrue</u>, 360 F. App'x 606, 615 (6th Cir. 2010). Several district courts in the Sixth Circuit followed <u>Cunningham</u> and remanded matters to the Commissioner when the VE's reliance on potentially obsolete job descriptions from the DOT raised sufficient doubt whether substantial evidence supported the ALJ's determination at the fifth step. *See e.g.* <u>Wright v. Berryhill</u>, No. 4:18-CV-00021, 2019 WL 498855, at *9 (W.D. Ky. Feb. 8, 2019); <u>Westmoreland v. Berryhill</u>, No. 3:17-cv-00096, 2018 WL 1522118, at *4 (S.D. Ohio Mar. 28, 2018); <u>Rollston v. Comm'r of Soc. Sec.</u>, No.1:16-CV-168, 2016 WL 6436676, at *4 (W.D. Mich. Nov. 1, 2016). Other district courts within the Sixth Circuit have criticized <u>Cunningham's</u> reasoning and declined to follow its holding. See e.g. <u>Kidd v. Berryhill</u>, No. 5:17-CV-420-REW, 2018 WL 3040894, at *7-10 (E.D. Ky. June 19,2018); <u>Montano v. Comm'r of Soc. Sec.</u>, No. 1:13-cv-70, 2014 WL 585363, at *15

(S.D. Ohio Feb. 14, 2014); Belew v. Astrue, No. 2:11-107-DCR, 2012 WL 3027114, at *9-10 (E.D. Ky. July 24, 2012).

In a recently unpublished order, the Sixth Circuit attempted to resolve the confusion among the district courts. O'Neal v. Comm'r of Soc. Sec., No. 18-2372, 2020 WL 97414, at *3-4 (6th Cir. Jan. 7, 2020). Because the regulations continue to recognize the DOT as a source of reliable information and the claimant did not cross-examine the vocational expert about the DOT job descriptions when he had the opportunity, the Sixth Circuit held the vocational expert's testimony constitutes substantial evidence to support the ALJ"s finding that the claimant was able to perform work that existed in significant numbers in the national economy. O'Neal v. Comm'r of Soc. Sec., No. 18-2372, 2020 WL 97414, at *3-4 (6th Cir. Jan. 7, 2020).

Applying the holding in O'Neal to the circumstances before this Court, during the administrative hearing the VE responded to the ALJ's hypothetical question by testifying that the hypothetical individual could perform occupations such as mail clerk, non-postal (DOT 209.687-026, approximately 45,000 national jobs); clerical assistant (DOT 239.567-010, approximately 75,000 national jobs); and marker (DOT 209.587-034, approximately 150,000 national jobs) (Tr. 54-55). Bourland had the opportunity to cross-examine the VE about the DOT descriptions for these three jobs (Tr. 56). Thus, in light of the holding in O'Neal, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that Bourland is able to perform work that exists in significant numbers in the national economy.

<u>Order</u>

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgment is **GRANTED** for the Commissioner.

March 12, 2020

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies:     Counsel